The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. All right we're ready for argument in our next case Lins versus the United States, Ms. Malarkey. This case raises two discretionary function exception to the Federal Court Claims Act which as your honors is aware is a remedial statute and all exceptions to it are to be read narrowly. The purpose of the act is to allow private citizens to sue the federal government and hold the government liable when their employee is acting in the same manner and to the same extent as a private individual would be liable. The discretionary function exception to the the federal Court Claims Act is interpreted using a two-part test that is laid out by the Supreme Court. The first part of that test states that if a regulation or governmental policy requires a course of action the government cannot be held liable so long as that prescribed course of action is followed. In this case we have a prescribed course of action that was not followed and as a result the case we have a situation where the Veterans Administration that was the entity the federal entity that had a residential drug and alcohol treatment program for veterans in which Mr. Lins was a patient had a patient safety policy it is found on pages starting on page 58 of the joint appendix and that policy prescribed a course of action it required zero tolerance for patient abuse. Patient abuse was defined within the policy. Patient abuse included the development of a personal relationship of a non-therapeutic purpose between a therapist and a veteran that was enrolled in the program and it required that when there was such abuse this is on page 59 of the joint appendix at a minimum the supervisor will assign the alleged abuser upon receiving notice to duties that do not involve. Excuse me. Judge Stacker has a question. Yes. Thank you judge. Yes. Yeah I can see how that policy may go to the negligent supervision claim but is it applicable to the negligent hiring and retention claim and if so how and if not is there another policy you would point to with regard to those claims? So your honor I think it's fair to say that although the memory is captions count one negligent hiring supervision and retention really the gist of the allegations that we were making in the complaint relates to the supervision and retention not the hiring. There was no allegation in the complaint that the Veterans Administration knew before it hired Ms. Burns Dr. Burns that she had a propensity to to engage in private personal relationships but the thrust of our complaint and what is alleged in the complaint is that the government learned during the course of Dr. Burns treatment of Mr. Lins that in fact she had developed a personal relationship and thereafter failed to properly supervise her and retained her when it should not have. So I hope that answers your question. I thought that when the government found out about Mr. Lins and the doctor going to a wedding they told her that was inappropriate and they took her office away and did other things to I guess you could say supervise her that were in accord with their policy. Part of what your honor has summarized is correct and part is not so with the complaint alleges is that they learned her supervisors that she planned to attend a wedding with him off-site for personal reasons told her that was inappropriate but then thereafter allowed her to continue to care for Mr. Lins for an extended period of time. It was not until another male patient not Mr. Lins someone else raised a complaint against Dr. Burns that she ultimately was removed from patient care and assigned to administrative duties. So our complaint... Go ahead. How do you deal with the court's this seems to hold the government employers hiring and supervisory decisions or discretionary functions as a per se rule? So the court did make that comment in a footnote in Souter. That comment in a footnote in Souter has been repeated in other decisions in the body of the opinion and I would say two things about that. Number one, to the extent that this court has made a blanket proclamation that all negligent hiring supervision and retention claims are barred by the discretionary function exception, I think with due respect to the court that that decision is simply wrong. I don't believe in Souter or any of the subsequent decisions the court has really given the thought and analysis to that holding to the extent that it is a holding. Setting aside negligent hiring without really being a part of our case, our position is Mr. Lins' position is that when the government has specific knowledge of an unsafe condition or of misconduct by one of its employees, the discretionary function exception is not implicated because there can be no sound public policy of a social, economic, or political nature supporting the decision to not do something about that. And so... If we assume that, just for argument, that your position has some viability, other than knowing that Mr. Lins and I can't remember the doctor's name but the doctor was going, they were going to a wedding, what other evidence was there alleged that the VA knew while the doctor was treating Mr. Lins? In the complaint and at the time the complaint was filed, that was all that was known. It was brought to their attention that she planned to attend a wedding and that there was a meeting wherein she was told that's not appropriate, you can't do that, but was allowed to continue to treat Mr. Lins. We did raise the issue of... That's your basis for liability, is that one event? Having not had the benefit of discovery, Your Honor, that's correct. We did argue, and I do believe we were entitled on the scope of employment question to have discovery, which is a separate issue that's raised in the briefs and the papers below, but without the benefit of being able to depose the supervisors to know what exactly they knew and when they knew it, that was the basis. I do believe that it is sufficient. When an employer is notified that a therapist intends to go to a wedding, which is clearly a personal, not happening on VA property, not happening as part of the therapy, not happening as part of the program. Would that alone be a violation of the zero tolerance policy in your view? I do. I do believe that it is. The policy specifically defines patient abuse as a non-professional relationship. I'm going back again, I keep looking to the side because the policy is on this monitor, to pages 58 and 59, but a non-professional relationship, and the policy states that the professional shall be removed at least from treating that particular individual until the complaint is investigated, and that, as alleged in the complaint, didn't happen here. Getting back to the discussion about suitor and negligent supervision and retention, there are a number of cases that, in my opinion, unlike the suitor and several other cases of this court, that do really analyze and provide thought to the question of whether, when an employer, a federal employer specifically receives notice of an employee negligence or indiscretion or any practice that is unsafe and fails to act, that that can, in fact, be the basis for a negligent supervision or retention claim against the federal government, and that the discretionary function assessment is not implicated. Even under your theory, you seem to have this one event where they were going to go to a wedding and carry an awful heavy load. I understand, Your Honor, but without the benefit of discovery, at the time the complaint was filed, having the benefit of only being able to see through the lens, that was the information that I had, and that is what formed my good faith basis for the complaint, and I do believe that had we had the chance for further discovery, we may have been able to ascertain more. But like some of these other cases that are cited in my brief, including Tennelli, which is a decision of the Ninth Circuit, and there's a couple of other district court decisions, it is not a per se rule that negligent hiring and supervision and retention claims are always barred by the discretionary function exception, and just so that I can reserve a few minutes for the next issue, I will just refer the Court back to those cases and state that when there is specific information of negligent or intentional misconduct by a federal employee that the employer is aware of, that does not implicate any reasonable social, economic, or policy, and the discretionary function exception as such should not apply. And I think interestingly, the district court actually, this is on joint appendix page 150 in the section where the district court was discussing the scope of employment question, made a comment that in most instances an employer is not protected by sovereign immunity from a negligent hiring, supervision, or retention claim, which entirely contradicts the holding of the first issue. But turning to the scope of employment issue very briefly with my remaining time, again, I do believe that this question should have been subject to discovery under this court's decision in the Kearns case. But Ms. Malarkey, even under, what could discovery possibly unearth that would make the conduct here, which is clearly unethical and malpractice, fall within the scope of employment? Doesn't Maryland law say that the action has to be authorized by the employer? Yes, it does. The zero tolerance policy hurts you here, doesn't it? Well, I'm not sure that it does, and the reason being that the Maryland law, yes, you're right, does say that in order to be found within the scope of employment, the conduct has to be incidence to the performance of one's work duties. But the court has also said, this is the Maryland Court of Appeals, that even if conduct is in direct opposition to the master's express and positive orders, it can still be held to be within the scope of employment if it's incident to the work duties. And here, I think, to answer your question about Maryland law, there is no Maryland reported decision that I am aware of or have ever been able to find in 15 years of practicing medical malpractice that analyzes the question of whether a therapist, a mental health care provider, can be acting in the scope of his or her employment when they use the therapeutic relationship to manipulate a patient into having a personal, private, and sexual relationship. And I think the answer to that question is yes, in the context of a mental health care provider, because mental health care providers are uniquely situated, and this is to answer your question, work discovery, I think, would have been able to elaborate on this question, because we could have taken depositions of Dr. Burns' supervisors to learn more about this program, how the program was run, what her job expectations were, and have the benefit of expert testimony to explain that the therapeutic relationship is a unique relationship. And in this particular case, the allegations were that Dr. Burns manipulated that relationship of proper therapy by saying things like Mr. Lenz needed to have intercourse with her in order to get over his intimacy problems, to have eye contact with her to get over his intimacy problems, to get over his feelings of being gay from incidents that had happened to him when he was a child. That is taking the therapeutic relationship and manipulating it in a way that is, in fact, incident to the performance of one's work duties. But under the scope of employment, I mean, the actions have to be foreseeable to the employer, and it cannot be a personal action by the abuser, so to speak. And I think that you all plaid or argued something to the effect of saying that these actions had no therapeutic purpose, which would seem to make it along the personal lines. And if I'm remembering correctly, the doctor went to great lengths to keep secret the relationship. So it seems like you've got some difficulties both on the foreseeability and the personal aspects of the scope of employment. I think that is where Discovery would have provided more information to the court to make this determination, Your Honor. Recognizing my time is about up, I would have explained why there is a transference phenomenon that goes on between patients and therapists, and it works both ways. A patient can develop feelings for a therapist, a therapist can develop feelings for a patient, and that is incident to the therapeutic relationship. And I do believe that with the benefit of Discovery and expert testimony to explain those phenomenon, and this is what has been found in the other cases that are cited in my brief, that that is, in fact, in this unique relationship, incident to the scope. All right. Thank you, Ms. Malarkey. Ms. Nichols? I think you're muted. I am. Apologies. May it please the court, Roanne Nichols for the United States. Your Honors, I would like to start where perhaps Ms. Appellant's counsel left off, and that is discretionary function. The sovereign immunity is to be narrowly concluded, and the exceptions mean what they say. Appellant's counsel, the concern expressed about the lack of discovery is somewhat limited here, because Appellant's counsel sued Dr. Burns individually in her individual capacity in state court, and while the motions were pending in this case, took her deposition in that proceeding in state court. So she did have information, has information, about what Dr. Burns would say about what her employers knew about the relationship, and as the court pointed out correctly, what the government learned, what the VA learned in this case, was that another patient, another veteran, filed a complaint against Dr. Burns. It was not sexual in nature, but it was a complaint, and three days after that, the VA terminated her clinical privileges. Okay, but Ms. Nichols, the VA did also know about this wedding that they were supposed to attend, which clearly violated the zero tolerance policy, and what did the VA do then? Your Honor, this is not the government's information, nor do we believe that it was information that Dr. Burns disclosed to counsel, Appellant counsel. Wait, you're saying that the VA did not know about this, the wedding they were supposed to attend? That's correct, Your Honor. If you look at the complaint, this is Joint Appendix 11, the statement is upon information and belief. The supervisors knew and had a meeting. That did not occur with respect to the wedding. It was not known to the VA, and in fact, if it had been known, Mr. Lins had the opportunity, actually three... at this point. We don't have discovery. So if the VA did know about the wedding that they were to attend, what was the VA to do under the zero tolerance policy? Well, actually... Were they supposed to separate them, remove her from the doctor-patient relationship at that point? If they knew, that would be correct. Your Honor, the allegations contained in the complaint are stated... Somewhere, either in the complaint or in the briefing, there's the representation that the VA told Dr. Burns not to go to the wedding. Your Honor, that is a statement made upon information and belief before counsel took the deposition of Dr. Burns, and had Dr. Burns supported that information... Right, right. But at this point, though, aren't we in the position where we take whatever's in the complaint as alleged to be truthful? That is... So we have to... That's correct. Yeah, we have to accept the fact that they knew about... So I think Judge Thacker's question was, was there something else that the VA was supposed to have done at that point? The policy, the zero tolerance policy, does not demand a separation of the therapist and the patient. That would have been, perhaps, the step that could be taken. Where am I supposed to look where it says it does not demand the separation of the therapist and the patient? Your Honor, that would be in the... That's Joint Appendix 59. So is the VA making a discretionary judgment at that point? What's the import of that? Your Honor, there would be some room for some element of discretion that the VA could exercise. But the... So, for example, review all pertinent information to determine whether the allegation is sufficiently credible to require a board investigation. Tell us where you're reading that. Joint Appendix 59. Which number? Joint Appendix 59 that says, at a minimum, the supervisor will assign the alleged abuser to duties that do not involve the delivery of patient care to the alleged victim, and the supervisor will instruct the alleged abuser to avoid all contact with the alleged victim. At a minimum. Yes, Your Honor. That's correct. Okay, that's what I said before, and you said that they didn't have to do that. The other question becomes, what is the investigation that is undertaken by the VA to determine the credibility of the allegations? Right. And that is under F. Yeah, that's after the, at a minimum, remove the... Separate the two. Yes, Judge. Okay. Go ahead. The other issue is the extent to which the invitation to a wedding, assuming that it is true, is sufficient to first bring the conduct within the scope of employment, and also to deprive the VA of any discretion to take action on that account. And the district court found that the allegation was not sufficient to, for either purpose, in particular scope of employment. Well, ma'am, is it true that the VA did not do that separation, despite the knowledge they had, until later complaints were filed? Is that true about the timing of the incidents? That's correct, Your Honor. Assuming the truth of the allegation, as the court must for purposes of a motion to dismiss for lack of subject matter jurisdiction, assuming the truth of that allegation, assuming that the VA knew, the VA undertook to terminate her clinical privileges after another veteran filed a complaint, and the VA at that point immediately suspended her clinical privileges. Well, based on the allegations in the complaint, what the VA knew was that Dr. Burns was going to go to a wedding with Mr. Lentz. So I guess the question is, what makes that one event an action that would require some duty under patient abuse? So what do you say to that? Why is that evidence or not evidence of patient abuse, if that's all you've got to go on? What is it? The fact that a patient may have invited his therapist to a wedding does not implicate patient abuse on the part, or may not implicate patient abuse on the part of the therapist, which is what may have been the case here. If that's the act, if that's the only act that implicates the policy or that implicates the relationship, we would maintain that that's insufficient. It's not enough. So what's the basis to say that it is enough or it isn't enough? That's what I'm trying to get at here. And apparently, based on the complaint, that's the only thing known to the VA, was this wedding invitation. That's correct. That's, in effect, patient abuse, and so Dr. Burns should have been segregated from her client at that point. And you say no. What basis do you have to say that? I mean, that would seem to be a discretionary judgment call on the part of the agency at that point, but I mean, what's your argument there? Your Honor, the argument relates to the facts of this case. The fact, the invitation to the wedding, if the government had knowledge of it, occurred in November or October of 2015. In December of 2015, Mr. Lins was discharged from the VA, but the relationship between Dr. Burns and Mr. Lins continued. It continued through June of 2016. After the other veteran made the complaint about Dr. Burns, after her clinical and after she resigned from the VA, that relationship continued, which indicates that had the VA removed Dr. Burns from his therapeutic duties, the relationship would have continued. The relationship had nothing to do with the scope of employment, did not advance the business purposes of the VA, was not authorized by the VA, and it continued nonetheless months after this purported invitation to the wedding. Okay. Can I go back to the discretionary function exception? I'm having trouble seeing how Fourth Circuit law has categorically barred negligent hiring under the discretionary function exception in suitor when that is just in a footnote and also doesn't provide any analysis at all. So how is or do you think that the Fourth Circuit has categorically barred negligent hiring under the discretionary function exception? The question really is tied into government knowledge, at least the discretionary hiring decision, because that turns on, well, what did the government know about the employee, the potential employee, when the employee was hired? Do you think that the Fourth Circuit has categorically barred negligent hiring under the discretionary function exception? The district court talked about an amalgamation, and this was Andrews versus United States, where the court looked at- So that sounds like a no. An amalgamation sounds like it's not categorically barred. It's not categorically barred. It may be categorically barred standing on its own, Judge, but it may not be barred if there is a knowledge component that is attendant to the hiring decision and particularly the facts indicating that the employee should not have been hired. I think this case, I didn't understand opposing counsel to emphasize the hiring part. It was more of the supervision and retention part. Yes, Your Honor. Maybe I'm fixated on the wrong thing here, but it seems like the whole crux of the plaintiff's case is that the invitation to the wedding, once known to the VA, was patient abuse under the zero tolerance policy, and that's what gets her to having stated a claim that would get passed a motion to dismiss. So tell us why or why not, and if you can point to in the policy, why that would not be abuse. Of course, that begs the question of why it was abuse, but it seems like to me if that was not abuse that came under the policy, then the plaintiff doesn't have a case. Your Honor, another perspective to look at this, if I may suggest, is to start with scope of employment, because was the sexual misconduct by Dr. Burns, was that within the scope of her employment? The answer to that is no, and if the government, the VA, had no reason to know, about this sexual misconduct, that's one element of behavior. On the other side of it, you've got an invitation to a wedding, and assume the government knew about that. Well, the sexual misconduct can put that in, yes, Judge? I might be confused, and I think I misspoke earlier when I said, I probably said negligent hiring, and I meant negligent supervision, but I think what at least I'm looking for, and maybe Judge Agee is as well, is assuming the allegation in the complaint about the wedding, attending a personal event outside of work, is true, as all we have right now is the complaint, does the zero tolerance policy bar that, and if so, where? I mean, is it okay for a therapist to go on a personal jaunt to a wedding, outside the therapeutic relationship with a patient, under this policy? Not under this policy, Your Honor, and not under policies of the American Psychological Association, Maryland statute, no. It's not appropriate. Okay, and then getting back to my question earlier, do you think that the Fourth Circuit, I think I said earlier, categorically bars negligent hiring, but I'll switch it to what I really meant. Does the Fourth Circuit categorically bar negligent supervision claims under the discretionary function? Well, Your Honor, I think it depends on how we as litigants look at pronouncements from the court, and the court may say, may find, may state that the government's negligent supervision, negligent retention is a discretionary function, but there are always cases, and there are always facts, where the court may reexamine that holding in another case, and say, but in this case, with the information before the court, in this case, when we know that the conduct that's alleged relates to attending a wedding, we have no other background conduct, that perhaps there's another way to approach it, and the court may say the discretionary function is not absolute, if the government knows, as alleged, that there's a plan to attend a wedding. I think that knowledge, and I believe that's what the district court was referencing in the opinion, about the amalgamation of discretionary function and government knowledge, and the effect of government knowledge on DF. Did that answer your question, Your Honor? I think so. I wouldn't say that there's a categorical rejection of any doctrine by a court, because the court can always revisit that, and courts do revisit it, given the facts of a case, a particular case, and what's involved. Good. But I would ask the court to focus on the issue of scope of employment. Thank you, Your Honor. All right. Thank you, Ms. Nichols, Ms. Malarkey. You have some time in rebuttal. Yes. Just piggybacking off of what Ms. Nichols just said, there are two distinct theories of liability here against the government. They are not to be confused with one another. Right. I was going to ask you that. If you lose on the vicarious liability issue, is it over, or do you have a separate claim that we need to consider, that is, the negligent supervision? Correct, Your Honor. The latter of what you said. There are two distinct theories of liability. One is that the government is vicariously liable for the actions, the malpractice, abuse of the therapeutic relationship of Dr. Burns, respondeat superior. That is where the scope of employment analysis comes in. Separate to that is the theory of liability for negligent retention or supervision after having knowledge of this potentially inappropriate relationship and failing to act. So I do think it's possible that I could lose on one of those issues and yet be permitted to proceed on the other. With respect to the discretionary function exception, that also is a two-part analysis. So I think we've talked a lot about the zero tolerance policy. I don't have much else to say about that, but I will just add that even if that policy does not prescribe a specific course of action that was not followed here, there's still another way for Mr. Linz to get around the discretionary function exception. And that's because the Supreme Court has said that even if there is not, is an element of choice, the choice must be of the nature the exception was designed to protect, specifically decisions based on public policy. And I think Judge Agee made a comment that it would be discretionary of the government to determine what to do. And I respectfully disagree. I don't think that those kinds of decisions when the government has knowledge of an inappropriate action or a dangerous condition, that they are, that there is discretion that is shielded by a public or social or economic policy. I think if that were the wall, then the exception would follow the rule. And I think, you know, I've cited in my brief the Indian towing case, which is a case involving a lighthouse, you know, that was negligently maintained and the government said, once you embark upon, maybe the decision to build the lighthouse is one that is founded with public policy. But once the government undertakes to do something, it has an obligation to do that in a non-negligent fashion. And so if you're not maintaining the lighthouse, then you are liable under the discretion and the discretionary function exception does not apply. And that is the principle that I'm advocating here. It's that. So do you see this as a case of per se liability? No, I think that this is a case involving it. Well, it's per se if the zero tolerance policy applies. And I think that answers the question, but like I said, even if the zero tolerance policy doesn't apply, I still think that there is a, is there should have been discovery. It should be up to a fact finder. The government hasn't even in this case articulated, what is the social political or economic policy that allegedly was implicated by the decision to retain and not supervise Dr. Burns. We don't even have an argument as to what that was. And I think the reason is that there isn't one. Those are ordinary questions of negligence. And the cases that I. If a plaintiff files a complaint that would relate to this policy and sets forth an act that they allege to be contrary to the policy. Is that sufficient in and of itself to get past the motion to dismiss? If there is a policy out there and the, and the government actors failed to follow it, then yes, the discretionary function exception does not apply. I'm talking about a situation where there is no stated policy because we undertake a different analysis. And so like the cases that have been cited in my brief with the lighthouse, there's a case involving harmful conditions in a commissary on a military base where there was mold in the meat department and the government had knowledge of it. There's even cases in the context of very similar to this case with prison, the Bureau of prisons and guards that the Bureau of prison specifically had knowledge of those guards had a propensity to attack in a sexual nature prisoners. And the courts have said that when that government has knowledge of an unsafe or dangerous condition and they do nothing, there is no social or economic policy that is implicated. And therefore the discretionary function exception does not apply. I hope that answers your question. I just would like to factually make one statement before closing. And that is Ms. Nichols stated that the only thing known to the VA was that Dr. Lins was invited to a wedding by the patient, Mr. Lins. I'm sorry. I think I just said Dr. Lins. Dr. Burns was invited. That is not the information that I have. That is not the information that was put in the complaint. And it's not what's alleged in the complaint. Correct. It's not what's alleged in the complaint. And again, because we didn't go forward with discovery, I was not able to depose the supervisors to find out specifically what information they had and when they had it. And the fact that the relationship continued after Dr. Burns was removed for patient care, the government had knowledge of that wedding long before. And it was the allowance of this relationship to continue for an extended period of time that led it to develop into what it was all during a time that Dr. Burns was employed by the VA and treating Mr. Lins on a daily basis. And so either under analysis of the discretionary function exception, I think that Mr. Burns is sticking to the case. My time is up. Are there any other questions? Seeing none, I'll thank counsel for their arguments in this case. And the court will take a short recess before our next case. Thank you. Thank you. This honorable court will take a brief recess.
judges: G. Steven Agee, Henry F. Floyd, Stephanie D. Thacker